UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.R., a minor; by and through his parent and guardian, KATIE RICE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FRESNO UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | No. 1:19-cv-00220-DAD-BAM<br><br>ORDER GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE<br><br>(Doc. Nos. 1, 6) |

On February 14, 2019, the parties initiated this action by filing a joint petition for approval of minor's compromise. (Doc. No. 1.) On March 20, 2019, the court issued an order construing the filing as a complaint and requiring further briefing. (Doc. No. 5.) On March 25, 2019, plaintiff submitted a supplemental brief in support of his petition for approval of minor's compromise. (Doc. No. 6.) For the reasons that follow, the court will grant the petition.

**BACKGROUND**

Plaintiff alleges as follows. Plaintiff is a minor who attended school within the Fresno Unified School District ("the District"). (Doc. No. 1 at 2.) Prior to P.R.'s first day of school, the District was aware that P.R. had a history of significant behavioral issues, including but not limited to aggression, elopement, self-injurious behavior, tantrums, and assaultive behavior toward others. (*Id.* at 2–3.) The District did not, however, offer to conduct a functional behavior assessment for P.R. at the beginning of the school year. (*Id.* at 3.)

1

In October 2016, while at school, P.R. was not being supervised and suffered substantial bruising around his left orbital. (*Id.*) District staff was unable to explain how the bruising had occurred. (*Id.*)

On November 1 and November 16, 2016, P.R. was restrained by the school principal. (*Id.*) The principal did not have any crisis intervention training, and no behavior emergency reports or injury reports were completed following the incident. (*Id.*)

On December 5, 2016, P.R.'s mother was called to pick up P.R. from school. (*Id.*) When she arrived, P.R. was sitting in a chair in wet grass and crying hysterically. (*Id.*) P.R. was cold and his clothes were dripping wet. (*Id.*) When P.R. attempted to get out of the chair, District staff pushed P.R. back down into the chair. (*Id.*) P.R. had been physically restrained twice that day, including one occasion that lasted approximately 25 minutes. (*Id.*) P.R. received significant scratches and bruising to his arms, neck, back, and chest as a result of the restraints. (*Id.*)

In January 2017, P.R. was assigned a new aide at a new school site. (*Id.*) The aide was not sufficiently trained given the severity of P.R.'s behavioral needs, and the District was aware that the aide was not sufficiently trained to work with P.R. (*Id.*) On February 24, 2017, P.R.'s mother and the principal observed the aide twisting P.R.'s arm in frustration. (*Id.*) The principal apologized to P.R.'s mother, explained that the conduct by the aide was not appropriate, and stated that she would talk to the aide. (*Id.*) Plaintiff alleges that the District should have immediately convened an individualized education plan ("IEP") meeting to discuss reassignment of P.R.'s one-to-one aide. (*Id.*) No behavior emergency report was completed following this incident, and no one from the District reported this incident to Child Protective Services. (*Id.*)

In April 2017, P.R.'s mother informed the District that the aide was not following P.R.'s IEP, would easily get upset with P.R. to the point of yelling, and would hold onto P.R. too tightly. (*Id.* at 4.) P.R.'s mother also notified the District that P.R. was coming home in urine-soaked clothing and had fecal matter on his bottom that had caused a rash. (*Id.*) P.R.'s mother specifically requested that a different aide be assigned to her son. (*Id.*)

On May 3, 2017, the aide became frustrated with P.R. and shoved him two times. (*Id.*) The aide then grabbed P.R.'s arm and shook him. (*Id.*) P.R. attempted to get away from the aide,

but she shoved him from behind, causing him to hit his head on a steel gate. (*Id.*) At the time, P.R. had a broken foot in a cast. (*Id.*) As a result of the aide shoving him, P.R.'s foot was displaced in the cast and he received a deep cut to his heel. (*Id.*) P.R.'s foot cast had to be removed and he had to undergo physical therapy. (*Id.*) The District did not immediately contact law enforcement or file a report with Child Protective Services. (*Id.*)

Immediately following the May 3, 2017 incident, P.R. broke out in a bad rash that affected his groin and buttocks areas. (*Id.*) After months of dermatology appointments and application of topical creams, it was determined that P.R. was suffering from inverse psoriasis, likely due to the trauma and stress he endured at school. (*Id.*) Because of the events described herein, P.R. was also diagnosed as suffering from post-traumatic stress disorder. (*Id.*)

Because of the May 3, 2017 incident, the aide was eventually arrested and charged with violation of Penal Code 273a(b). (*Id.*)

Based upon these allegations, plaintiff asserts three violations of federal law: (1) that the District infringed on P.R.'s rights under the Fourth Amendment to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable assaults of his person; (2) that the District discriminated against him in violation of Title II of the Americans with Disabilities Act of 1990 by failing to ensure that educational services were provided on an equal basis to children with disabilities, and by failing to accommodate P.R.'s unique needs with appropriate behavior supports; and (3) that the District discriminated against P.R. in violation of Section 504 of the Rehabilitation Act of 1973 by failing to accommodate his unique needs with appropriate behavior supports. (Doc. No. 6 at 2.)

## LEGAL STANDARD

This court has a duty to protect the interests of minors participating in litigation before it. *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983). To carry out this duty, the court must "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron*, 724 F.2d at 1363 ("[A] court must independently investigate and evaluate any compromise or settlement of a minor's claims to

assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem.") (citation omitted).

In examining the fairness of a settlement of a minor's federal claims, the Ninth Circuit has held that a district court's inquiry should focus solely on "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82; *see also id.* at 1179 n.2 (limiting the court's holding to cases involving federal claims only). Where a settlement involves state law claims, federal courts generally are guided by state law. *See* Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ¶ 15:138 (Cal. & 9th Cir. Eds. 2015) ("Federal courts generally require that claims by minors . . . be settled in accordance with applicable state law. California law requires court approval of the fairness and terms of the settlement."). A settlement for a minor and attorney's fees to represent a minor must be approved by the court. Cal. Prob. Code § 3601; Cal. Fam. Code § 6602. Reasonable expenses and court costs to be paid out of the settlement also must be approved by the court. Cal. Prob. Code § 3601. Finally, the Local Rules of this court require the parties to make disclosures regarding the minors involved, the nature of the controversy, the manner in which the compromise was determined, and whether a conflict of interest may exist between the minor and her attorney. *See* Local Rules 202(b)–(c).

**ANALYSIS**

Here, plaintiff's counsel represents that the proposed settlement agreement resolves fully, finally, and forever any and all known and unknown claims, rights, demands, or causes of action between P.R. and the District that were raised or could have been raised through January 31, 2019. (Doc. No. 1 at 4.) The settlement provides that the District will pay the sum of $550,000 into plaintiff's counsel's ("Shaw Firm") client trust within thirty days of approval of the minor's compromise. (*Id.*) The Shaw Firm will use a portion of the settlement funds to pay an estate planning attorney to establish a special needs trust, and once the trust is established, the Shaw Firm will deposit the remaining funds into the account. (*Id.* at 5.) The settlement further provides for $115,000 in attorneys' fees to be awarded to the Shaw Firm, which plaintiff's

4

counsel states is a reduced amount from the percentage set forth in the applicable retainer agreement. (*Id.*) After deduction of attorneys' fees and costs, the net recovery to P.R. will be $435,000. (*Id.*)

Plaintiff's counsel states that this recovery is fair and reasonable, because the amount allocated to the special needs trust will be more than sufficient to cover the costs of care for P.R. and to provide the compensatory services he requires as a result of the incidents alleged in this action. (Doc. No. 1 at 7–8.) According to counsel, the settlement net proceeds are sufficient to cover applied behavior analysis therapy as well as additional therapeutic interventions for P.R., and in the event that a higher level of care is required, the settlement will be sufficient to cover the cost of a non-public school or a residential treatment facility for two to four years. (Doc. No. 6 at 3–4.)

The court has also examined cases with similar factual allegations that have been litigated in this district and finds that the net recovery of $435,000 to the minor in this case to be comparable to or in excess of other net recoveries obtained. *See, e.g.*, *Warchol v. Kings Cty. Office of Educ.*, No. 1:17-cv-00106-DAD-MJS, 2018 WL 1185053 (E.D. Cal. Mar. 7, 2018) (approving net recovery of $56,488.32, where plaintiff diagnosed with autism alleged ongoing verbal and physical abuse by teacher); *Brooks v. Fresno Unified Sch. Dist.,* No. 1:15-cv-00673-WBS-BAM, 2015 WL 9304862 (E.D. Cal. Dec. 22, 2015) (approving net settlement payment of $300,000 after a psychologist diagnosed plaintiff as suffering from post-traumatic stress disorder as a result of the conduct alleged and estimated that two to five years of therapy was necessary to recover from psychological trauma); *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.,* No. 1:11-cv-01112-SAB, 2013 WL 275271 (E.D. Cal. Jan. 23, 2013) (approving net settlement payment of $30,000 based on allegations that the school improperly used restraints and other punishments on minor, resulting in a sprained ankle in one instance); *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-cv-00926-GEB-CMK, 2010 WL 1032669 (E.D. Cal. Mar. 19, 2010) (approving net settlement payment of $16,500 based on allegations that the minor was subject to unnecessary force at school).

/////

Finally, pursuant to Local Rule 202(c), plaintiff's counsel has provided a declaration stating that he was retained by Katie Rice, P.R.'s mother and guardian ad litem in this action. (Doc. No. 6-2 at ¶ 2.) Attorney Shaw states that he has no relationship to the District and was not retained or referred the case by the District. (*Id.* at ¶ 3.) The amount in attorneys' fees allocated to counsel is approximately twenty percent of the net recovery, which counsel avers is less than the agreed upon fee set out in the retainer agreement. (*Id.* at ¶ 5.) Attorney Shaw declares that he elected to receive a smaller attorneys' fee percentage in an effort to resolve this case and ensure that the remainder was sufficient to cover the costs of P.R.'s care. (*Id.*)

Upon consideration of all the information provided in connection with the pending motion, the court is satisfied that this settlement is fair and reasonable in light of the facts of the case and the minor's specific claim.

**CONCLUSION**

For the reasons set forth above:

1. Plaintiff's petition for approval of minor's compromise (Doc. Nos. 1, 6) is granted;
2. Pursuant to the parties' settlement agreement (Doc. No. 1, Ex. A):
    a. Defendant shall deposit $550,000 into the Shaw Firm's client trust within thirty (30) days of the date of this order;
    b. The Shaw Firm shall use a portion of the funds to pay an estate planning attorney to set up a special needs trust. Once the trust is established, the Shaw Firm shall deposit the remaining funds into the special needs trust account;
    c. The Shaw Firm shall be awarded $115,000 from the funds for attorneys' fees and costs;
    d. P.R. shall receive a net recovery of $435,000 after deduction of attorneys' fees and costs; and

/////

/////

/////

3. The parties are directed to file a request for dismissal of this action within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Dated: **April 16, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE